UNITED STATES DISTRICT COURT, M.D. FLORIDA

GREGORY R. DIXON AND MARIA GOLDBERG,

        Plaintiff,

v.

THE HONORABLE LEE E. HAWORTH, CHIEF CIRCUIT COURT JUDGE FOR THE TWELFTH CIRCUIT OF FLORIDA, THE HONORABLE HARRY M. RAPKIN, CIRCUIT COURT JUDGE FOR THE TWELFTH JUDICIAL CIRCUIT OF FLORIDA AND THE HONORABLE PAUL LOGAN, CIRCUIT COURT JUDGE FOR THE TWELFTH JUDICIAL CIRCUIT OF FLORIDA,

        Defendants.

_____/

No.

June 2, 2009.

**Memorandum of Law in Support of Motion for Temporary Restraining Order, Preliminary Hearing and Injunction**

Respectfully submitted by Richard F. Kessler, member Bar of the District of Columbia and Circuit Court of Appeals for the District of Columbia Circuit, Special Counsel, appearing specially under an emergency motion pro haec vice, appearing pro bono publico for plaintiffs, Gregory W. Dixon.,

I. *INTRODUCTION*

In this action, pursuant to 42 U.S.C. § 1983, the plaintiffs seek to vindicate their Fifth Amendment rights as applied to the State of Florida under the 14th Amendment. The defendants willingly, wittingly and by their own admission engaged in a course of judicial conduct which intentionally fails to document or otherwise substantiate that the plaintiff bringing foreclosure was either the mortgage creditor or acting on behalf of the mortgage creditor. The defendants also have failed to correct widespread non-compliance by plaintiff's counsel appearing in foreclosure cases with Court orders. Instead, defendants intentionally rely upon documentation they believe to be incomplete or incorrect to render judgment in favor of persons not legally entitled to foreclose in uncontested cases. This course of conduct by the 12th Circuit deprives defendants in an uncontested foreclosure action of an effective hearing, disregards plaintiff's lack of standing, overlooks plaintiff's failure to state a cause of action upon which relief can be granted and unlawfully compels a defendant to defend against another party not entitled to sue. The decision of the court not to examine or examine pleadings and related documents of record

prior to rendering summary judgment is non-feascence and deprives defendants of due process of law.

Irreparable injury has been done by 12th Circuit foreclosure adjudications relying upon deficient or defective documentation to those parties in uncontested cases who have suffered improperly granted foreclosure and those who will suffer such injury absent immediate intervention by this Court. Exhibit 1 shows the 12th Circuit Docket. Many of these cases are uncontested and scheduled for summary judgment in a rocket docket procedure. It is the policy and practice of the 12th Circuit to knowingly and intentionally ignore documentary defects which would be evident from a cursory inspection because the defendant has not entered an affirmative defense and cannot afford legal representation in Court. The Court has acted to accelerate the rate of improperly documented, uncontested cases by instituting a "rocket docket" where the Court intends to adjudicate 250 cases in one day.

The facts in issue will not be contested. The continuation of the abusive conditions in the 12th Circuit regarding uncontested cases is unconstitutional and unconscionable. The issue here is one of law. Chief Justice Haworth has said that the Court does not owe a higher degree of protection or compliance with due process to defendants who do not defend themselves. The Court's legal position is indefensible.

## II. *PARTIES*

The Plaintiffs are Greg Dixon 3970 Berlin Ave, Sarasota, FL 34233, Ted Hockensmith, 2443 Comet Lane, North Port, FL 34286 and Maria Goldberg, 7298 Conrad Ave., Sarasota, FL 34234. All plaintiffs are residents of Sarasota County and own and reside in the home being foreclosed. Each plaintiff is in foreclosure and is not represented by counsel in state court and is being treated as an uncontested foreclosure case by the Court. In April 2009, Plaintiff Dixon, pro se, moved the Court to set aside summary judgment and reopen his case but the Court has deferred ruling upon the motion until it receives a response from the plaintiff in the foreclosure case.

The Defendants are The Honorable Lee E. Haworth, Chief Circuit Court Judge for the Twelfth Circuit of Florida, the Honorable Harry M. Rapkin, Circuit Court Judge for the Twelfth Judicial Circuit of Florida and the Honorable Paul Logan, Circuit Court Judge for the Twelfth Judicial Circuit of Florida. Judge Rapkin is assigned to hear all uncontested foreclosure cases in Sarasota County. Judge Logan is assigned to hear all uncontested foreclosure cases in Manatee County.

## III. *J URISDICTION*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) providing for original jurisdiction in suits authorized by 42 U.S.C. § 1983. Furthermore, jurisdiction is available under 28 U.S.C. § 1331 because this action arises under the Fifth and Fourteenth

Amendments to the Constitution of the United States.

Venue in this District is proper under 28 U.S.C. § 1391(b). The claims arose and the defendant resides in this District.

This action is not barred by the 11th Amendment under the theory of sovereign immunity. In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court provided an important exception to the 11th Amendment sovereign immunity States enjoy: the Stripping Doctrine. The Stripping Doctrine allows injunctive relief against what are essentially state actions. While the 11th Amendment immunizes States from actions by private parties, the Stripping Doctrine argues that when a state officer takes an unconstitutional action, he or she acts beyond the scope of her authority, as no State could have authorized him or her to act unconstitutionally. When acting outside such authority the officer was "stripped" of his or her official power and cannot invoke the State's immunity, although the officer remains subject to the consequences of the officer's official conduct. Unless a citizen can enjoin the action the officer took in his or her official capacity, no remedy could be provided for an otherwise unconstitutional action (as the State itself is immune from prosecution).

The Supreme Court's decisions in *Ex Parte Young*, 209 U.S. 123 (1908) and *Edelman v. Jordan*, 415 U.S. 651 (1974) held that federal courts may grant injunctions against unconstitutional actions taken by State officers. Since the officers were acting outside the scope of what a State could authorize them to do they were stripped of their power, and their official actions are as such void. Such relief is necessary to protect the Constitution's Supremacy Clause; otherwise, immune states could take unconstitutional actions with impunity, invalidating the supremacy of our Constitution.

## IV. STATEMENT OF THE FACTS

The Sarasota Herald Tribune on April 22, 2009 reported : "The Sarasota-Bradenton-Venice market was just shy of making the Top 20 list of places facing the highest percentage of foreclosures in the first quarter. The local market had 4,991 filings, or 1.28 percent of its total housing units, during the quarter, according to a list compiled by Irvine, Calif.-based Realty Trac Inc. of markets with populations of 200,000 or more."

In a report issued by Chief Judge Haworth, the defendant, wrote: "In the Federalist Papers #22, Alexander Hamilton made this observation: "Laws are a dead letter without courts to expound and define their true meaning and operations." The Constitution requires the courts to interpret and apply the laws that govern our state. Potential budget cuts would impact the day-to-day-operations of the courts and the people the courts serve during a period when crime, family issues and mortgage foreclosures are increasing. President Lincoln enumerated the many blessings bestowed on the United States and in particular referred to the observance of law and

order when he said that "in the midst of a civil war of unequaled magnitude and severity order has been maintained, the laws have been respected and obeyed, and harmony has prevailed every where except in the theatre of military conflict…" Challenge: *To secure adequate funding for the courts so that constitutional rights can be protected and laws mandated by the Legislature implemented*."  (December 4, 2008) See
http://12circuit.state.fl.us/Portals/0/PDF/12thCircuitProfile.pdf

The problem faced by the 12th Circuit is reiterated statewide. See FLORIDA SUPREME COURT TASK FORCE ON RESIDENTIAL MORTGAGE FORECLOSURE CASES INTERIM REPORT(May 8,2009), Exhibit1. See also:
http://www.floridasupremecourt.org/pub_info/documents/05-08-2009_Foreclosure_TaskForce_Interim_Report.pdf

In Sarasota County, families are losing their homes in judicial proceedings relying upon incomplete and improper documentation. The absence of funding is no defense to the violation of the due process rights of defendants in uncontested foreclosure cases. The 12th Circuit is sacrificing the rights of those least able to defend themselves and most in need of the Court's protection  in the midst of a financial crisis of epic and international proportions in response to inadequate funding from the state legislature.

Chief Judge Haworth convened a "Brown Bag Luncheon" on May 1, 2009. It was attended by the judges who hear foreclosure cases, both contested and uncontested, court administrative staff, interested member of the local Bar and interested persons. This event will be referred to as the "Luncheon". The event in its 90 minute entirety may be viewed at:
http://www.jud12.flcourts.org/Portals/0/Video/Foreclosure/index.htm

Chief Judge Haworth said there is a crisis. "Between 2006 and 2008, there was a 634% increase in foreclosure filings [in the 12th Circuit]." Luncheon. The deluge overwhelmed the straitened resources of his Court. At the same time, the Court was forced to cut staff, creating more work for fewer people to do it. The failure to check documents submitted has created a substantial increase in defective and deficient pleadings and supporting documentation.

Judge Donna Berlin stated that she coincidentally discovered two final judgment orders submitted by plaintiff's counsel tendered for her signature each for a property situated in Miami. But for the happy accident that she checked the documents, the order would have been signed. Luncheon. Judge Janet Dunnegan complained of the "sloppy paperwork" she regularly receives from Plaintiff's counsel.id. She gave the example of receiving an affidavit of military service and service of process naming a defendant who was not a party to the lawsuit. id. Such glaring mistakes are routinely overlooked or ignored by the Court in uncontested cases.

In response to a study and petition submitted to Chief Judge Haworth (Exhibit 2) documenting defects in documents upon which the Court relies in case after case of uncontested foreclosure,

the Chief Judge instructed his assistant, Ms. Janice Hounchell to reply in writing on his behalf as follows:

"We have No resources, magistrates or case managers, to verify checklists to insure compliance. We were forced to fire people we needed to assist with foreclosure two years ago. We are sailing with a skeleton crew. Our budget is now what it was in 2004, before the tsunami of foreclosures hit us. We have all hands on deck now struggling to avoid furloughs. I simply have no one to assign to such duties, although I am working with Stetson law School to set up an unpaid intern program to help with these issue this summer. It's kind of like the FHP catching speeders. We'll catch a few in hopes of keeping the others honest, but most will escape. We don't like this but this is the hand the legislature has dealt us." The email in its entirely is attached as Exhibit 2. The Chief Judge honestly admits glaring mistakes are routinely overlooked or ignored by the Court in uncontested cases because of budget cutbacks." Exhibit 3.

Funding shortages cannot be used as an excuse for denying due process to parties before a court. An admission that "most [errors] will escape [ detection] in a 2 ½ minute rocket docket hearing before some family loses its home is not simply "dislikeable" It is illegal. It simply will not do.

By letter dated April 24, 2009, a study entitled "Haste Makes Waste" was submitted to Defendant Judge Haworth. The documents are attached as Exhibit 2 may also be seen at documentaryclearinghouse.com. The study used a sample of 180 cases which showed that in more than three out of four cases, foreclosure proceeded in the 12th Circuit using incomplete or incorrect documentation. To correct the problem, the study recommended the following actions to the Court: Revise the Court's existing summary judgment checklist to require submission of the following documents for summary judgment:

    (a) Where the original promissory note is available:
    (1) The original promissory note.
    (2) The endorsements forming a chain from the obligee to the plaintiff.
    (3) The assignment(s) forming a chain from the mortgagee to the plaintiff.
    (4) The perfection of the assignment(s) by showing evidence of recordation.

    (b) Where the original promissory note has been lost or destroyed:
    (1) Authenticated copies as best evidence of the documents listed in paragraph 3(a)(1)(4)
    (2) Where such an authenticated document cannot be produced, credible, competent evidence to enable the court to reconstitute the document.
    (3) Where such competent evidence to reconstitute the doicument is unavailable, credible competent evidence that the plaintiff is legally entitled to foreclose and obtain repayment of the debt.

The Court's existing checklist is attached as Exhibit 4. Routinely where the original note is missing, the affidavit required to reconstitute the note in equity under Florida law is not a part of the Court's record, and the chain of connection from the original to the current mortgage by

assignment or allonge is missing. The study found where the plaintiff pled that the original mortgage note was lost or destroyed ($51^{1/3}$ % of the cases), plaintiff offered nothing more than its self-serving declaration in the pleadings that plaintiff was the owner and holder of the mortgage note without any requirement by the court of an affirmative proffer of evidence.

Complete documentation (original promissory note endorsed to plaintiff or bearer and recorded assignment(s) from mortgagee to plaintiff) was filed with this court in $23^{1/2}$% of the cases in the study. More than 3 out of 4 cases were allowed to proceed with incomplete documentation. Specifically in uncontested cases, there is no way for the Court to know that the party seeking foreclosure is legally entitled to repayment of the underlying debt. The study shows that, in three out of four cases, foreclosures in Sarasota County proceeded with incomplete or improper documentation. Chief Judge Haworth admitted the accuracy of the findings; "We have spot-checked ourselves and found many deficiencies like those you have uncovered." Letter.

At the same time, the Court has itself noted massive non-compliance with its orders for submission of documents by plaintiff's counsel. Chief Judge Haworth says there is widespread noncompliance with the Administrative Order dealing with cancellation of summary judgment hearings. Exhibit 5. He also said there was widespread noncompliance with the Administrative Order for a mandatory conciliation conference by telephone. Exhibit 5. "We have had 95% noncompliance with conciliation and other documentary requirements." Luncheon.
Chief Judge Haworth cancelled the privilege of permitting attorneys to attend hearings by telephone because, in part, "… many out-of-circuit foreclosure plaintiffs and their counsel who are volume filers of foreclosure actions have failed to comply with the Twelfth Circuit Administrative Orders 14.1 and 15.1; in particular, they are ignoring the prohibition on setting hearings without contemporaneous filing of summary judgment foreclosure motions and packets, they are failing to include with their complaint and summons the Notice to Homeowners of the Circuit's Homestead Foreclosure Conciliation program, and they are submitting incomplete, false or inaccurate foreclosure summary judgment checklists and related documents;". Administrative Order 2009-2.1 (February 9, 2009). Exhibit 6. See also

http://www.jud12.flcourts.org/ProgramsampServices/ForeclosureInformation/tabid/279/Default.aspx

Chief Judge Haworth said he was unwilling to revise the summary judgment checklist or institute a system to make sure plaintiff's counsel complied with submission requirements because it posed too great a burden on the "foreclosure mills". "The current AO on foreclosures requires what we think is necessary. Our judges do not wish to add more documentary or filing requirements for the plaintiffs at this time. We will do what we can to detect non-compliance but the current arrangement already is proving complicated and overwhelming for the foreclosure mills." Letter. The Court is saying that requiring a plaintiff to show that the plaintiff is legally entitled to foreclose "is too complicated and overwhelming for the foreclosure mills." The Court's position nullifies the legal institution of judicial foreclosure; the Court and its judges could be replaced by a summary judgment order signing machine.

According to the Sarasota Herald Tribune reporter Todd Ruger in a column published on May 14, 2009, " [Chief Judge] Haworth said the system puts the burden on the person being foreclosed on to point out any flaws there may be in the case against them."If they decide for whatever reason they choose not to defend it, then they are defaulted," Herald tribune (May 14, 2009). See also Luncheon. The results of this policy for judicial practice and procedure before the 12th Circuit are defective documentation and recalcitrant attorneys.

The Study provides evidence of an invidious, destructive process which cavalierly overlooks the rights and equities of unrepresented mortgage debtors in favor of expediting foreclosure by "foreclosure mills". These debtors are unrepresented because they lack the means to defend themselves and the financial ability to retain counsel. However Judge Haworth insists that the Court has no obligation to protect these defendants. At the Brown Bag Luncheon, Judge Haworth said the Court needed a judicial triage system to get rid of the dead wood of "hopeless cases". Luncheon. Defendants overwhelmed by debt are not "dead wood". If even the lowest criminal is entitled to due process, why should this Court be permitted to deny due process to families overwhelmed by debt?

In response to the high volume of foreclosure and instead of remediating the document problem, Chief Judge Haworth assigned retired Judge Harry Rapkin to hear uncontested cases every other Friday. Luncheon. Chief Judge Haworth introduced Judge Rapkin as the "Rocket Man" because he conducted 500 summary judgment foreclosures in one day in Lee County. Luncheon. Chief Judge Haworth said he is planning to have Judge Rapkin hear 125 cases in the morning and 125 cases in the after noon. Luncheon. Instead of fixing the problem, the 12th Circuit has decided to accelerate the rate at which irreparable injury is done. Exhibit 7.

## VI. *ARGUMENT*

The model for the American system of justice is adversarial, not inquisitorial. This means that our system uses a form of trial by combat. In short, a defendant once hauled into court is expected to defend or lose by default. Under such a system, indictment in criminal procedure or the institution of civil litigation in civil procedure can become the instrument of harassment and persecution of a defendant. The obligation to defend oneself is not without limitation. In criminal procedures, not further relevant in this case, safeguards are created by requiring "probable cause" and requiring a defendant to be timely arraigned. Laying of charges in more serious cases may require a preliminary hearing or the handing up of an indictment by a grand jury.

On the civil side, safety measures for the protection of defendants from spurious claims and abusive process have also been created. Kelly A. McGrath, Appellant, v.Michael P. Caron, Appellee. Decision No. 4D08-3955., (4th D.C. App. May 6, 2009)

Accordingly, the rules of procedure may require a complaint to be verified; that specific documents be attached to a complaint to show the legitimacy of its basis as in foreclosure and malpractice. In addition, judicial doctrines have evolved, such as the doctrines of "case and controversy", "standing" and" jurisdiction over the subject matter" to restrict and limit the causes and complaints which can be resolved through litigation.

This raises the issue whether a court ever has the authority to raise a safety measure sua sponte if it is not raised by a defendant. On the one hand, where a defendant fails to interpose an affirmative defense, the court can treat such failure as a waiver of the defense. However under the factual circumstances of this case, this rule, unqualified, stands the safeguards on their head. If the safeguards mentioned only apply to those who defend themselves, those who are unwilling, unable or financially incapable of making a defense become the victims of spurious claims and abusive process. In short, those most in need of protection by a court receive the least protection.

Courts in Florida have raised safety measure issues for the protection of a defendant sua sponte. <u>Mortgage Electronic Registration Systems, Inc. v. Azize,</u> 965 So2d 151 (Fla. App. 2 Dist 2007); <u>McDuffie v. City of Jacksonville,</u> 763 So2d 1201 (Fla. App. 1 Dist. 2000)**.** The failure of the 12th Circuit to use its sua sponte authority becomes a dereliction of duty when the Court knows and admits that it repeatedly is awarding summary judgment through its use of legally defective pleadings and documents. Moreover where a court fails to enforce its rules, it legitimates the improper short cuts taken by plaintiffs' counsel to file in the way that gets the quickest result in the shortest time and for the lowest cost.

The facts of this case present a unique set of circumstances.

*THE DELUGE OF FORECLOSURES*

The private securitization of mortgage debt through the secondary mortgage market has profoundly altered the structure and composition of the mortgage market from where it stood fifty years ago. The genius of American private enterprise created and established a financial system for the conversion of long term illiquid debt into liquid, short term debt structured as marketable securities. The regulatory regime for dealing with this phenomenon is at best inchoate, rudimentary and evolving.

Because of the profitability of converting mortgages to securities, too many mortgage loans were made to financially unqualified debtors. Similarly, in the secondary market, too many securities were issued which were financially insecure and imprudent investments. The massive mortgage defaults taking place in the past two years were unanticipated by the secondary mortgage market. It was a "black swan event". The mortgage defaults have also triggered a crisis in financial markets.

As result, the Courts have been overwhelmed with an influx of foreclosure actions. To handle the flow of foreclosures, law firms have been created to act as foreclosure mills to process foreclosures on a legal assembly line. The improvident rush to make deals in the mortgage market and securities market led to undue haste which means critical documents evidencing mortgage transactions were often incomplete, misplaced, lost or destroyed. Accordingly the pleadings and documentation of a large number of foreclosure cases being filed in the 12th Circuit are incomplete or incorrect.

The inspection of documents filed for foreclosure to ascertain whether complete or correct is a clerical function. It does not require the services of a judge. In Sarasota, a private study found that in three out of four cases studied, the documentation was defective or deficient. Study. The Chief Judge admitted from his own knowledge and experience this was a fair and correct statement of the facts. Letter. The Chief Judge admitted the defects although easily correctible were not within the Court's power to correct because the Court lacked funds and resources. Instead of dealing with the problem, the Court's answer is to institute a rocket docket, a process which limits the hearing for summary judgment to $2^{1/2}$ minutes per case. Instead of a hearing, the defendant gets a hanging.

In the jurisdiction of the 12th Circuit, Sarasota, Manatee and De Soto Counties, foreclosure has had terrible consequences for the community. Homes in neighborhoods stand vacant, abandoned and uncared for. Such homes further depress real estate values in an already depressed real estate market. Property values, assessments and taxes have suffered.

The structure of the secondary market results in foreclosure becoming the first recourse to default instead of the last resort. The existing system militates against reconciliation and mediation of an alternate dispute resolution to foreclosure. In short, the undue haste to judgment of the rocket docket relying upon deficient and defective pleadings and documentation lays waste to the community and its homeowners.

*THE PRIMACY OF THE MORTGAGE DEBT*

Chapter 702 of Florida Statutes provides authority for foreclosure in Florida. It explicitly deals with cases where a note is lost, stolen or destroyed. Connelly v. Matthews, 899 So2d (Fla. App. 4 Dist. 2005. To show, the right to collect the dent absent the original note other evidence is to be pled.

"RULE 1.130.
ATTACHING COPY OF
CAUSE OF ACTION AND
EXHIBITS

(a) Instruments Attached. All bonds, notes, bills

of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading. No papers shall be unnecessarily annexed as exhibits. The pleadings shall contain no unnecessary recitals of deeds, documents, contracts, or other instruments.

(b) Part for All Purposes. Any exhibit attached to a pleading shall be considered a part thereof for all purposes. Statements in a pleading may be adopted by reference in a different part of the same pleading, in another pleading, or in any motion.

Florida does not require production of the original note in cases where a plaintiff pleads the original has been lost or destroyed. The U.C.C. attempts to replace the formulaic production of the original promissory note with legal entitlement to get a debt repaid. A party legally entitled to be paid by the party in default is legally entitled to foreclose.

### "673.3091. Enforcement of lost, destroyed, or stolen instrument

(1) A person not in possession of an instrument is entitled to enforce the instrument if:

(a) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(b) The loss of possession was not the result of a transfer by the person or a lawful seizure; and

(c) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(2) A person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means." Fla.Stat. Sec. 673.3091.

Instead of any evidence, the 12th Circuit accepts, as legally sufficient evidence of entitlement to be repaid, the unsubstantiated, self-serving allegation of the putative creditor. Without specifying the form of proof or how much proof is required, the U.C.C. approach clearly

anticipates some showing of entitlement. The quid pro quo for eliminating the slavish dependence on the production of the original note is competent evidence showing that the party seeking repayment is legally entitled to repayment.

> "Although the assignment of the mortgage from Everglade Lumber Company to Gillian was defectively executed, it may be taken as evidence to show that the company had, before the commencement of the suit, sold and transferred to Gillian its entire interest in the note and mortgage. A mere delivery of a note and mortgage, with intention to pass the title, upon a proper consideration, will vest the equitable interest in the person to whom it is so delivered. Any form of assignment of a mortgage, which transfers the real and beneficial interest in the securities unconditionally to the assignee, will entitle him to maintain an action for foreclosure. Or if there had been no written assignment, Gillian would be entitled to foreclose in equity upon proof of his purchase of the debt." WM Specialty Mortgage v Salomon, 874 So2d 660- (4th Fla.App. 2004).

The point the Court in WM Specialty Mortgage is making is that what really counts is that the party seeking to foreclose actually is entitled to receive repayment of the underlying debt.

The point was again made in Mortgage Electronic Registration Systems, Inc. v. Azize, supra, where the Court held that the foreclosure action could be brought by MERS as the representative of the owner of the note. "Here, MERS's counsel explained to the trial judge at the hearing that, in these transactions, the notes are frequently transferred to MERS for the purpose of foreclosure without MERS actually obtaining the beneficial interest in the note. Although the complaint does not allege how or why MERS came to be the owner and holder of the note, the trial court's dismissal was not based on this deficit. Rather, the trial court found that even if MERS was the holder of the note based on a transfer by the lender or a servicing agent, MERS could never be a proper plaintiff because it did not own the beneficial interest in the note. This was an erroneous conclusion." Id.

However, the Court went out of its way to add: "Since the trial court did not base its ruling on this issue [how or why MERS became the holder], we offer no opinion as to whether the complaint fails to properly plead a cause of action without this information being alleged." Id.

By ignoring this precedent, the 12th Circuit makes a mockery of its uncontested foreclosure proceedings. Only the party who is to be repaid or the party's representative is legally entitled to enforce the debt, foreclose and take the property from the debtor. Given the deplorable condition of the documentation filed in the 12th Circuit by plaintiffs' counsel, the Court has no rational basis for drawing such an inference from the unsubstantiated, self-serving declarations of plaintiffs' counsel.

In Cherry v. Chase Manhattan Mortgage, the court states " Chase also requests, as part of the foreclosure counterclaim, the reestablishment of the note initially associated with the mortgage, as it is unable to produce the original note and provide by affidavit evidence of its loss. Chase has complied with the requirements of Section 673.301, *Florida Statutes* to enforce the

provisions of the lost note, providing a sworn affidavit claiming that Chase was in possession of the note and was entitled to enforce it when the loss of possession occurred; the loss of the note was not the result of a transfer or lawful seizure; and Chase cannot reasonably obtain possession of the note because of the loss. This Court holds the note to be reestablished and that Chase has the lawful right to enforce the note upon the issuance of this order." Cherry v. Chase Manhattan Mortgage, 190 F.Supp.1330 (DCMDFla: 2002)

Cherry follows the principal of requiring evidence which consisted of a sworn affidavit from the plaintiff. The study, supra, did not find such affidavits in the docket in cases where plaintiffs pled a lost or destroyed note. Whether the affidavit, by itself, is sufficient evidence is questionable. However for purposes of the motion, Cherry may be distinguished from the instant case for four reasons. First, the defendant was represented by counsel who failed to raise the affirmative defense. This case does not deal with an uncontested case. Secondly the combination of the overwhelming number of uncontested cases together with the known problems created by insufficient or incorrect documentation plaguing the 12th Circuit was not before the Court in Cherry. Third, perhaps most important of all, "Both parties in Cherry agree that the mortgage was released before the debt was fully paid." Id. Finally, the Court found the defendant acted in bad faith when it did not tender or deliver the payments to the Court alleged to have been made by the defendant in escrow instead of paid to the plaintiff creditor who had issued a satisfaction in error.

*DUE PROCESS*

The decision of the 12th Circuit to accelerate adjudication of foreclosure cases by deliberately ignoring defective pleadings and documents of record filed with the Court and, instead, rendering summary judgment in reliance upon such defective and deficient documentation in uncontested cases is a violation of due process and a dereliction of judicial duty.

(A) DEFECTIVE HEARING

Prior to granting summary judgment, it is the accepted legal practice for a court to hold a hearing and consider the evidence. Under Florida Law, a motion for summary judgment under Section 1.510 of the Florida Rules of Civil procedure requires a hearing. The pleadings and attachments to pleading are treated as part of the evidence before the Court. The Court has an affirmative duty to consider the evidence before granting summary judgment whether summary judgment is granted upon a motion by the plaintiff or upon a show cause order issued by the court to the defendant. The Court's duty to accept the facts in the complaint as true does not

require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." <u>Golden Dawn Corp. v. Neves</u>, Slip Copy, 2009 WL 413989,S.D.Fla.,2009, February 18, 2009.

However, in the case of a Florida foreclosure, Section 702.10 of the Florida Statutes provides:

"(1) After a complaint in a foreclosure proceeding has been filed, the mortgagee may request an order to show cause for the entry of final judgment and the court shall immediately review the complaint. If, upon examination of the complaint, the court finds that the complaint is verified and alleges a cause of action to foreclose on real property, the court shall promptly issue an order directed to the defendant to show cause why a final judgment of foreclosure should not be entered."  **FL ST Sec. 702.10**

Where a complaint seeking foreclosure of residential real estate is uncontested, Section 702.10(1)(b) states:

"The right to be heard at the hearing to show cause is waived if the defendant, after being served as provided by law with an order to show cause, engages in conduct that clearly shows that the defendant has relinquished the right to be heard on that order. The defendant's failure to file defenses by a motion or by a sworn or verified answer or to appear at the hearing duly scheduled on the order to show cause presumptively constitutes conduct that clearly shows that the defendant has relinquished the right to be heard." id.

The statute seems to say where the defendant clearly (What makes it "clear" is undefined.) shows defendant has relinquished the right to be heard, failure to appear at the duly scheduled hearing creates a further presumption of relinquishment. It appears that the defendant's right to be heard at the duly scheduled hearing has been waived before the hearing at which his non-appearance further confirms the relinquishment. Normally such a hearing is held to afford the party served with the show cause order the opportunity to be heard without a presumption that such party had waived the right to be heard.

Section 702(1)(d) states

"If the court finds that the defendant has waived the right to be heard as provided in paragraph (b), the court shall promptly enter a final judgment of foreclosure. If the court finds that the defendant has not waived the right to be heard on the order to show cause, the court shall then determine whether there is cause not to enter a final judgment of foreclosure. If the court finds that the defendant has not shown cause, the court shall promptly enter a judgment of foreclosure." id.

Thus, in an uncontested case, defendant never gets an actual hearing In a hearing, the court has a duty to the parties to examine the pleadings, attachments and evidence before the court prior to granting summary judgment. In the case of the "show cause order", summary judgment is

granted without a hearing and in the 12th Circuit by a Court which publicly announces it has not the time, staff or funds to examine the evidence before it before putting a family into the street. The duly scheduled hearing referred to in the statute is a sham as conducted in the 12th Circuit. It is not a hearing in any normal legal sense of the term.

In an uncontested foreclosure case, the failure of the judges in the 12th Circuit, whether for a "show cause order" or summary judgment, to inspect the pleadings, attachments and affidavits and other showings made by the parties before reaching a determination of the probable validity of the underlying claim alleged against the mortgagor is a denial of due process under the 5th and 14th Amendments.[1]

### (B) Violation of Section 702 of Florida Foreclosure Law

Alternatively, Section 702 is susceptible of a narrower reading. Subsection(1) states:

> "After a complaint in a foreclosure proceeding has been filed, <u>the mortgagee may request an order to show cause for the entry of final judgment and the court shall immediately review the complaint. If, upon examination of the complaint, the court finds that the complaint is verified and alleges a cause of action to foreclose on real property,</u> the court shall promptly issue an order directed to the defendant to show cause why a final judgment of foreclosure should not be entered." *Underlining supplied"*. id.

It could be argued that by its failure to consider the pleadings, attachments and affidavits and other showings made by the parties to make a determination of the probable validity of the underlying claim alleged against the mortgagor, the 12th Circuit has failed to comply with the underlined requirements. Such an inspection conducted by the trial judge, if done properly and in good faith, would go a long way to assure that the party filing the complaint has provided sufficient and correct documentation to show the party is legally entitled to foreclose.[2]

### (C) COURT'S FAILURE TO PERFORM ITS DUTIES

---

[1] It would also appear that subsections (1)(b) and (d) and (2)(b) and (d) are also unconstitutional. However that argument is not raised in this motion.

[2] Such a construction of Section 702(1) does not cure the problem of the apparently deficient hearing in Section 702(1)(b) where the defendant who has failed to file pleadings is presumed to have waived the right to be heard. That argument applies to the entire State of Florida and is not raised in this motion and is moot.

The Court knows and admits in many cases which come before it, the pleadings are defective and deficient and the plaintiffs lack standing to sue. "'To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant, and that such case or controversy continues from the commencement through the existence of the litigation.'" _Id._ at 377. In other words, individuals 'must allege some threatened or actual injury resulting from the putatively illegal action.' _Linda R.S. v. Richard D.,_ 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).'" Olen Properties Corp. v. Moss, 981 So.2d 515 (Fla.App. 4 Dist.,2008). The Court further knows and admits that a simple, cursory inspection by the presiding judge or a magistrate or clerk of the documents filed by the plaintiffs will indicate when filed documents are defective or deficient. The Court states that it lacks the funds and resources needed to perform the inspection function but must continue to adjudicate foreclosures under the Florida Constitution, albeit improperly. Counsel is not aware of any precedent which embodies this principal. The Court knows and admits that it is granting summary judgment in reliance upon documentation which if inspected by the Court, would indicate the plaintiff's lack of standing. "Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. _Celotex Corp. v. Catrett,_ 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." Betts v Advance America,213 F.R.D.416 (D.C.M.D.FL 2003).

Summary judgment is appropriate only when it is conclusively demonstrated that there are no genuine issues as to any material fact. Fla.R.Civ.P. 1.510; _Burroughs Corp. v. American Druggists' Ins.,_ 450 So.2d 540 (Fla. 2d DCA 1984). Rule 1.510 specifies that this determination is based on a review of the "pleadings, depositions, answers to interrogatories and _admissions on file_ together with the affidavits, if any," (emphasis added), and summary judgment should only be granted where those documents show that there is no genuine issue as to any material fact. Indeed, where there is any doubt or where conflicting inferences may reasonably be adduced from the evidence concerning the existence or nonexistence of a genuine issue of material fact, a motion for summary judgment must be denied. _Schwartz v. Hughes Supply, Inc.,_ 537 So.2d 190 (Fla. 2d DCA 1989). Whether or not plaintiff is entitled to repayment of the debt and is therefore entitled to foreclose raises an inescapable question of material fact. Holland v CSX Transportation, 583 So.2d 777 (Fla.Ct.App. 2nd Dist.589).

The plaintiff relying upon insufficient documentation has failed to show the requisite injury required for standing. The result is that defendants are consistently compelled to defend against

claimants without standing, and the Court, fully cognizant of this predicament, does nothing to prevent its continuation.

In uncontested cases, where a court awards summary judgment without a cursory inspection of the documentation filed in support of the motion for summary judgment, the court wrongfully compels a defendant to defend in a suit where there is no case or controversy. The failure of the Court to perform its duties sua sponte violates the due process rights of the defendant under the 5th and 14th Amendments.

The Court has transferred the burden of proof and burden of going forward to defendants by incorrectly ruling that standing can only be raised as an affirmative defense. However the documentary insufficiency of incomplete or incorrect documents is a defect in the pleadings. If a suit can only be brought if there is a genuine case or controversy, then the case or controversy must exist before the defendant answers the complaint. Instead the 12th Circuit will only recognize the lack of a case or controversy if the defendant raises an affirmative defense to the complaint. This unfairly provides the plaintiff with a presumption, rebuttable by the defense, of standing and subject matter jurisdiction, when in uncontested case after case in the 12th Circuit, the opposite is true.

*(D)*
*(E) FAILURE TO STATE A CASE*

A complaint in foreclosure which contains incomplete or incorrect documentation of entitlement to payment of the debt, as a matter of law, fails to state a complaint upon which relief can be granted. To deprive a defendant of defendant's property based upon such a com plaint is a violation of due process under the 5th and 14th Amendments. Under Florida Law, a pleading by plaintiff must state a case for which relief can be granted. "In Florida courts, a complaint must state a cause of action. Fla.R.Civ.P. 1.110(b). While federal courts are inclined to ignore proper pleading requirements, that is not so in Florida practice. Trawick, *Fla.Prac. and Proc.,* § 7-5.1 (1988 ed.). *Massey-Ferguson, Inc. v. Santa Rosa Tractor Company, Inc.,* 366 So.2d 90 (Fla. 1st DCA), *cert. denied,* 376 So.2d 75 (Fla.1979). The failure to allege compliance with the condition precedent made the complaint in this case fatally defective. *Babe, Inc. v. Baby's Formula Service, Inc.,* 165 So.2d 795 (Fla. 3d DCA 1964). *See Ashley v. Lamar,* 468 So.2d 433 (Fla. 5th DCA 1985); *San Marco Contracting Co. v. State Dept. of Transportation,* 386 So.2d 615 (Fla. 1st DCA 1980); *Massey-Ferguson, Inc. v. Santa Rosa Tractor Company, Inc., supra; Capital Nat. Bank v. Southern Pine Isle Corp.,* 353 So.2d 600 (Fla. 3d DCA 1978), *cert. denied,* 368 So.2d 1363 (1979); *Old Republic Ins. Co. v. Von Onweller Const. Co.,* 239 So.2d 503 (Fla. 2d DCA 1970)." Nguyen v. Roth Realty, Inc.,550 So.2d 490(Fla.App. 5 Dist.,1989)

The 12th Circuit regularly and routinely issues summary judgment in reliance upon complaints which the court knows or has reason to know are fatally defective.

Rule 130(a) of the Florida Rule of Civil procedure requires:

a.     "All bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading. No papers shall be unnecessarily annexed as exhibits. The pleadings shall contain no unnecessary recitals of deeds, documents, contracts, or other instruments." FRCP Section 130.

The holder of a bearer note must make a showing of entitlement to the note, some evidence of ownership, to have standing to foreclose. Such a showing consists of something more than the bare, unsubstantiated, self-serving allegations of the putative, alleged holder of the note.

The Court knows and admits that incomplete or incorrect instruments purporting to show ownership of the debt by plaintiff are attached to large numbers of foreclosure complaints filed in the 12th Circuit. Where the Court deliberately and admittedly decides not to correct such deficiencies because foreclosure mills already find it difficult enough to meet documentary submission requirements, the Court deprives defendants of their property without due process of law under the 5th and 14th Amendments.

### (F) EQUITY

All courts sitting in equity are supposed to do equity between the parties. <u>Demorizi v. Demorizi</u>, 851 So2d 243 (3rd Fla. App. 2003). The 12th Circuit does not do equity to defendants in uncontested foreclosure cases. It affords the lowest measure of protection by the Court to those who need it most because undefended defendants are the least able to defend themselves. Defendants are losing their homes to plaintiffs which lack the right to foreclose. The 12th Circuit is indiscriminately making extraordinary equitable relief, foreclosure, available to parties not entitled to such remedy. The institution of the "rocket docket" ,makes a mockery of the hearing process for summary judgment of foreclosure. Defendants in uncontested cases are treated as hopeless cases needlessly congesting the Court's docket instead of defendants with rights. Finally, for the reasons fully discussed above, the 12th Circuit unfairly accords plaintiff an unwarranted presumption of standing and subject matter jurisdiction.

Continuation of the state of affairs in the 12th Circuit would be unconscionable. Courts preside to enforce laws not ignore them.

### TEMPORARY RESTRAINING ORDER

[Federal Rules of Civil Procedure Rule 65(b)](#) provides that a temporary restraining order may be issued without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court, in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. [FRCP Rule 65(b)](#).

### 1. *LIKELIHOOD OF SUCCESS ON THE MERITS*

The facts in issue will not be contested. The continuation of the abusive conditions in the 12th Circuit regarding uncontested cases is unconstitutional. The Plaintiff will almost certainly prevail at any hearing on the merits of its claims.

### 2. *IRREPARABLE INJURY*

The plaintiffs are unable to defend themselves in this case. All are in foreclosure proceedings, No affirmative defenses have been raised or can likely be anticipated. Each case is slated to go to default judgment. Each defendant will suffer the loss of a home. Such a loss is incalculable in terms of pain, suffering, embarrassment and humiliation. The trepidation of loss of a home at any time is a painful hardship every day for the plaintiffs. Each is a victim of a fate over which each plaintiff feels no sense of control. Under the present procedure, the Court has no way of knowing which cases are "hopeless' and which cases would benefit from the alternate dispute resolution contemplated by the Court's Homestead Conciliation Program. There is a high likelihood that Judge Rapkin or his counterpart in Manatee County, Judge Paul Logan, will dispose of these cases before this Court can fully hear the matters raised in this motion.

Injunctive relief will force the defendants to revise the judicial checklist to assure that the party seeking foreclosure has submitted evidence demonstrating that party's legal entitlement to foreclose. It will also compel the Court to employ clerks to collect, assemble and review pleadings for sufficiency and completeness. It will allow the creation of a record upon which a court can properly grant summary judgment to a plaintiff legally entitled to foreclose.

### 3. *BALANCING OF HARM*

There is nothing which defendants need to do to correct the problem of incorrect and inadequate documentation which cannot be corrected quickly. The problem is essentially one of clerical record collection and verification. It need not involve a judge's time. What questions a judge may feel it necessary to ask a plaintiff at a hearing for summary judgment with respect to a specific record before the court in a specific case is a matter of the judge's discretion and need not concern this Court at this time. There is no reason to believe anything other than given a proper record, each judge will do the job professionally and properly.

Once the documentary problem has been corrected, accelerated adjudications of uncontested cases will again take place. However, it will no longer be necessary to violate the due process rights of the debtors in order to efficiently manage the caseload of the Court. Finally, the harm to the debtor losing a home in violation of due process rights can never again be remedied or corrected. Once the house is gone, the house is gone and another American family is homeless.

The Defendants simply cannot be harmed by the issuance of an injunction because the relief the Plaintiff seeks is merely to force the Defendants to *comply with the law.* Thus, the issuance of a TRO will merely ensure the Defendants *do not continue to* violate the law.

### 4. *PUBLIC INTEREST*

The facts of this case demonstrate a foreclosure process in disarray with dereliction of judicial responsibilities by the Court and widespread disregard of Court orders by attorneys. Such conduct left unchecked erodes public confidence in the fairness and efficacy of our judicial system. Public trust and confidence will not be reposed in a judicial system which fails to meet its obligation to protect defendants and control the foreclosure process. It is in the highest public interest to have our courts governed by laws and not by men.

All too often, expedience trumps principal and the end is used to justify the means. The public interest will be served by temporarily enjoining foreclosure in the 12th Circuit until the system can be modified to accord with lawful procedure. Unconstitutional procedures do not serve the public interest even if such procedures effectively unclog an over burdened docket. The proceedings of a court should set an example. Those responsible for enforcing the law should also bear responsibility for following the law.

Foreclosure should not be a first recourse but a last resort. Accordingly, the temporary delay occasioned by a temporary injunction will promote recourse to alternate dispute resolution.

Finally, the issuance of injunctive relief against the 12th Circuit may cause the Florida Supreme Court Task Force On Residential Mortgage Foreclosure Cases to consider the problems faced by the 12th Circuit and institute needed reforms upon a state-wide basis.

### VI. CONCLUSION

Under our adversarial system of justice, a defendant is expected and required to defend himself or herself. Also, lawyers are considered officers of the court in which they appear. It is normal and appropriate for a court to rely upon representations and certifications by counsel appearing before a court regarding pleadings and documents. However, the unusual facts of this case carve out an exception to these norms of practice and procedure. The 12th Circuit cannot rely upon these principles and precedents to ignore and avoid correction of problems relating to defective and deficient

documentation and failure of plaintiff's counsel to comply with the orders of the Court relating to documentary submission requirements. According due process to defendants in uncontested foreclosure cases constitutes a countervailing and overriding requirement of law.

**For the foregoing reasons, Plaintiff respectfully requests the Court to grant its Motion for Temporary Restraining Order, issue a Temporary Restraining Order and set this matter for a full hearing on Plaintiffs motion for a preliminary injunction and to consolidate that hearing with a hearing on the merits.**

Date: June 2, 2009

Respectfully submitted,


Richard F. Kessler,
Counsel for Plaintiff by Special Appearance and for the Limited  Purpose of these Proceedings
4902 Sabal Lake Circle
Sarasota FL 34238
941-924-5608
richardfkessler@verizon.net